# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**EDWARD OSBORNE,**

       **Plaintiff,**

-vs-              Case No. 2:11-cv-691-FtM-DNF

**WELLS FARGO ADVISORS, LLC,**
**formerly known as Wachovia Securities,**
**LLC,**

       **Defendant.**

_____

# ORDER

This cause came on for consideration on the following motion(s) filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS AND TO COMPEL ARBITRATION (Doc. No. 9)** |
| **FILED:** | December 28, 2011 |

**THEREON** it is **ORDERED** that the Motion to Compel Arbitration is **GRANTED** and the Motion to Dismiss is **DENIED**.

**I. Background**

  Defendant, Wells Fargo Advisors, LLC, f/k/a Wachovia Securities, LLC, is requesting that the Court refer all claims in this matter to arbitration and either stay or dismiss this action. This action arises out of Plaintiff, Edward Osborne's employment with Defendant and two Promissory Notes ("Note 1" "Note 2" collectively "the Notes") Plaintiff executed in connection with that employment. (Doc. 9, p. 1). Plaintiff also executed Forgivable Loan Disclosure Statements in connection with the

Notes. (Doc. 9, Ex. 2). The Forgivable Loan Disclosure Statements forgave the money loaned to Plaintiff under the Notes over an extended period of time. (Doc. 9, Ex. 2). Note 1 was executed as an incentive for Plaintiff to start employment with Defendant and Note 2 was executed based on Plaintiff's productivity during his employment with Defendant. (Doc. 9, p. 3). Pursuant to the terms of the Notes, Plaintiff was required to repay any outstanding balances on the Notes upon his termination or resignation. (Doc. 18, Ex. 1, p. 1). Plaintiff resigned from his employment with Defendant which caused the remaining balances on the Notes to become due. (Doc. 18, Ex. 1, p. 1).

Defendant initially filed a Statement of Claim in Arbitration with the Financial Industry Regulatory Authority ("FINRA") requesting an award for the remaining balance on the Notes. (Doc. 9, p. 2). Plaintiff opposed arbitration filing a Motion to Decline Jurisdiction with the FINRA. (Doc. 9, p. 2). The FINRA denied Plaintiff's motion and notified the parties that arbitration would proceed before the FINRA. (Doc. 9, p. 2). Plaintiff then filed a Statement of Answer with the FINRA and a Complaint with the Circuit Court of Charlotte County, Florida, seeking a declaration of the rights of the parties under the Notes. (Doc. 9, p. 2). Defendant removed the State Court action to this Court pursuant to 28 U.S.C. § 1441. (Doc. 9, p. 2). Plaintiff's Complaint seeks a declaratory judgment that he is not obligated to participate in arbitration and that the Notes he executed with Defendant are unenforceable. (Doc. 2, p. 2).

**II. Analysis**

The issue is whether there is an enforceable arbitration agreement between Plaintiff and Defendant. Defendant argues that Plaintiff should be compelled to arbitrate because the Uniform Application for Securities Industry Registration or Transfer ("Form U-4") Plaintiff signed requires

arbitration under the FINRA. (Doc. 9, p. 5). Plaintiff argues that the dispute with Defendant falls outside of the scope of the FINRA which would require him to arbitrate. (Doc. 12, p. 2).

There is a strong federal policy supporting arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (citing *Moses*, 460 U.S. at 24-25). However, "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).

"[T]he [Federal Arbitration Act] requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4). "Generally, when deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Senti v. Sanger Works Factory, Inc.*, 2007 WL 1174076, *5 (M.D. Fla. Apr. 18, 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Therefore, the Court looks to Florida law to determine if there is an enforceable arbitration agreement." *Id*. (citing *A.I. Trade Finance, Inc. v. Petra International Banking Corp.*, 62 F.3d 1454, 1563 (D.C. Cir. 1995)). "Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) (citing

*Terminix Int'l Co. L.P. v. Ponzio*, 693 So.2d 104, 106 (Fla. 5th DCA 1997)). Waiver is not at issue here, therefore the Court will address the first two issues.

### A. Whether a valid written agreement to arbitrate exists.

The Form U-4 signed by Plaintiff states in pertinent part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-law of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.[1]

(Doc. 9, Ex. 7, p. 9). Plaintiff also signed a Pre-Dispute Arbitration Clause when he signed the Form U-4. (Doc. 9, p. 4). The Pre-Dispute Arbitration Clause Plaintiff signed stated the agreement's purpose was to, "inform or remind [Plaintiff] that the Form U-4 includes a Pre-Dispute Arbitration Clause." (Doc. 9, Ex. 8). The agreement stated Plaintiff was agreeing to, "arbitrate any dispute, claim, or controversy between [Plaintiff] and [Plaintiff's] firm . . . that is required to be arbitrated under the rules of the self-regulatory organizations with which [Plaintiff was] registering." (Doc. 9, Ex. 8). In *Dunn v. Citigroup Global Markets, Inc.*, 2009 WL 909480 (S.D. Fla. Apr. 1, 2009) the Court found that the language of the Form U-4, "unambiguously provide[d] for arbitration." *Id.* at 2.[2] *See Kidd v. Equitable Life Assur. Soc. of U.S.*, 32 F.3d 516, 520 (11th Cir. 1994) (Form U-4 subjects employment disputes to arbitration). The Form U-4 is a written agreement in which Plaintiff agreed to arbitrate any disputes that may arise with his firm under the SROs with which he was applying. Additionally, the

---

[1] The self-regulatory organization ("SRO") in this case is the FINRA. The FINRA was formed by consolidating the National Association of Securities Dealers ("NASD") and the New York Stock Exchange.

[2] The Form U-4 agreement in *Dunn* is virtually identical to the Form U-4 agreement in the present case.

Pre-Dispute Arbitration Clause reminded or informed Plaintiff that he was agreeing to arbitrate under the appropriate SRO in the Form U-4. The SRO in this case is the FINRA. Besides stating in his Complaint that Plaintiff, "never signed an arbitration agreement specific to this matter," (Doc. 2, p. 2) Plaintiff makes no legal arguments contesting the validity of the Form U-4 agreement to arbitrate under the FINRA. Therefore, the Court finds that the Form U-4 is a valid written agreement to arbitrate disputes between Plaintiff and Defendant under the FINRA.

**B. Whether an arbitrable issue exits under the FINRA.**

FINRA Rule 13100 states that an Associated Person is defined as, "a person associated with a member, as that term is defined in paragraph (r)." (Doc. 9, Ex. 12, p.1). Paragraph (r) defines a person associated with a member as, "[a] natural person who is registered or has applied for registration under the Rules of FINRA," and includes, "a person formerly associated with a member." (Doc. 9. Ex. 12, p. 2-3). FINRA Rule 13100 defines a member as, "any broker or dealer admitted to membership in the FINRA, whether or not the membership has been terminated or cancelled." (Doc. 9 Ex. 12, p. 2). Defendant is a broker-dealer registered with the Securities and Exchange Commission in Florida and a member of the FINRA which makes it a member as defined by FINRA Rule 13100. (Doc. 18, Ex. 1, p. 2). Plaintiff is a former employee of Defendant and registered under the Rules of the FINRA making him an associated person as defined by FINRA Rule 13100. (Doc. 9, p. 1).

FINRA Rule 13200 states in pertinent part, "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." (Doc. 9, Ex. 11, p. 1). Applying FINRA Rules 13100 and 13200 the Court finds that the dispute is an arbitrable issue under the FINRA because the dispute arises from the business activities between a member (Defendant) and

an associated person (Plaintiff). Plaintiff argues that the current dispute is outside the scope of FINRA Rule 13200 because the Notes are personal loans and liabilities and in no way relate to the business activities regulated by the FINRA. (Doc. 12, p. 4).

Plaintiff relies upon *Valentine Capital Asset Mgmt., Inc. v. Agahi*, 174 Cal. App. 4th 606 (Cal. Ct. App. 2009) where the Court stated that Rule 13200 required arbitration only if the dispute arises out of, "the business activities of an individual *as* an associated person of a FINRA member." *Id.* at 616. Plaintiff correctly cites *Valentine* but fails to show that the Notes are outside the scope of the business activities, "of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." (Doc. 9, Ex. 11, p. 1). The Court in *Valentine* wanted to limit the scope of arbitrable issues that fell under FINRA Rule 13200 stating, "[C]ommon sense dictates that the phrase 'business activities of . . . an associated person' must have *some* limitation." *Id.* at 615. The Court further stated:

> [t]here is no indication in Rule 13200 . . . suggesting that FINRA intended to bring within the scope of FINRA arbitrations every dispute that an associated person might have in a business he or she pursues on the side, as a free lance photographer, coin collector, novelist, real estate agent, auto mechanic, or the like. Indeed a variety of disputes, utterly unrelated to the securities industry, might arise between individuals who happen to be associated persons . . . These disputes would certainly arise out of the parties' business activities, but neither the parties nor FINRA would reasonably expect these private disputes to be appropriate for an arbitration established as part of the regulation of stock brokerage firms.

*Id.* at 615-616.

The Notes Plaintiff executed with Defendant did not arise from any side businesses of the parties but from their EMPLOYER-EMPLOYEE RELATIONSHIP. Disputes concerning employee compensation are an arbitrable dispute arising out of a business activity between a member and an

associated person. *Dunn v. Citigroup Global Markets, Inc.*, 2009 WL 909480 at *1 (S.D. Fla. Apr. 1, 2009) (Form U-4 arbitration clause enforceable when plaintiffs claimed defendant breached employment agreement and defendant accused plaintiffs of intentionally collecting excessive compensation); *Downey v. Robert W. Baird & Co. Inc.*, 2007 WL 2729578 at *1 (M.D. Fla. Sept. 18, 2007) (motion to arbitrate granted when plaintiff alleged defendant failed to pay overtime and breached employment contract by failing to pay bonuses); *Chapman v. Lehman Bros., Inc.*, 279 F. Supp. 2d 1286, 1287 (S.D. Fla. Aug. 26, 2003) (arbitration appropriate when plaintiff brought suit alleging defendant failed to pay overtime compensation).

Plaintiff argues that arbitration is inappropriate because the current dispute about the Notes is not an activity regulated by the FINRA. However, as the Eleventh Circuit stated, "[i]f the NASD did not mandate arbitration of employer-employee disputes, there would be no reason to require [employees] to sign U-4 forms promising to arbitrate such disputes." *Kidd v. Equitable Life Assur. Soc. of U.S.*, 32 F.3d 516, 520 (11th Cir. 1994). FINRA Rule 13806 also provides that promissory note disputes between members and associated persons fall within the scope of arbitration under the FINRA. Rule 13806 titled "Promissory Note Proceedings" states, "this rule applies to arbitrations solely involving a member's claim that an associated person failed to pay money owed on a promissory note." (Doc. 9, Ex. 13, p. 1). In the instant case, Defendant, a member under the FINRA, alleges that Plaintiff, an associated person failed to pay money owed on a promissory note. These facts are directly on point with Rule 13806. Plaintiff argues that, "[t]his case is not a promissory note between a member and an associated person, but a dispute between a broker-dealer Wachovia, and a registered representative, Osborne." (Doc. 12, p. 4). As stated above Defendant is a member because FINRA Rule 13100 defines a member as, "any broker or dealer admitted to membership in FINRA."

(Doc. 9, Ex. 12, p. 1-2). Additionally, under Rule 13100 Plaintiff is an associated person making Rules 13200 and 13806 directly on point for this dispute. Furthermore, "employment disputes between . . . members and their 'registered representatives' . . . [are] subject to mandatory arbitration." *Kidd*, 32 F.3d at 520. As demonstrated by the FINRA Rules, promissory note disputes between members and associated persons are arbitrable issues under the FINRA. Therefore, the Court finds that this dispute must be submitted to arbitration.

**IT IS HEREBY FURTHER ORDERED:**

1) This case is **STAYED** pending the completion of the arbitration. The parties shall file a joint report regarding arbitration every ninety (90) days.

2) The Clerk of Court is directed to administratively close this file.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this __19th__ day of July, 2012.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record